IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHEN R. COUCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 12-cv-0904-MJR-SCW |
| | ) |
| SALVADOR A. GODINEZ, | ) |
| ERIC NUTALL, | ) |
| GLADYSE TAYLOR, | ) |
| DERWIN RYKER, | ) |
| DONALD GAETZ, | ) |
| and RICHARD YOUNG, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### I. Introduction and Procedural History

In this pro se civil rights lawsuit filed under 28 U.S.C. 1983, Stephen Couch ("Plaintiff," now an inmate at Menard Correctional Center) asserted claims against various correctional officials at three prisons within the Illinois Department of Corrections ("IDOC"). Plaintiff's complaint was filed in August 2012 in the United States District Court for the Central District of Illinois, while he was confined at Western Illinois Correctional Center. It presented claims arising from incidents which occurred at Lawrence Correctional Center and Pinckneyville Correctional Center. The allegations precipitated transfer of the case to this Court, because Lawrence and Pinckneyville Correctional Centers are located in the Southern District of Illinois.

Once the suit was here, the undersigned District Judge granted Plaintiff pauper

status and conducted threshold review pursuant to 28 U.S.C. 1915A. In that threshold review Order (Doc. 15), the undersigned organized Plaintiff's allegations as follows:

**Count 1** – a retaliation claim against Eric Nutall;

**Count 2** – a conspiracy to retaliate claim (retaliation based on Plaintiff's filing of grievances) against Defendants Salvador Godinez, Gladyse Taylor, Derwin Ryker, Donald Gaetz, and Richard Young;

**Count 3** – a failure to protect claim (protection from a fellow inmate named Phillip Dotson) against Defendants Ryker and Nutall; and

**Count 4** – a medical neglect claim against unnamed medical personnel.[1]

Service was ordered, and the case was referred to the Honorable Stephen C. Williams, United States Magistrate Judge, to handle pretrial proceedings through final pretrial conference. Answers were filed, and in January 2013, Judge Williams entered a Trial Practice Schedule setting various deadlines. Defendant "Unknown Medical Personnel" was dismissed via May 2013 Order of the undersigned District Judge (Doc. 58), and the case proceeded against the six identified Defendants -- Eric Nutall, Salvador Godinez, Gladyse Taylor, Derwin Ryker, Donald Gaetz, and Richard Young (collectively in remainder of this Order, "Defendants").

Now before the Court is a motion for partial summary judgment filed with supporting brief by Defendants (Docs. 71-72). The motion seeks summary judgment on Plaintiff's conspiracy to retaliate (Count 2) and failure to protect (Count 3) claims, but not on Plaintiff's retaliation claim against Defendant Nutall (Count 1).

---

[1] Defendants Nutall and "Unnamed Medical Personnel" were not named by Plaintiff in his complaint; they were added as Defendants via the Court's threshold review Order (Doc. 15, p. 5).

Plaintiff responded to the motion in late October 2014 (Doc. 92). For the reasons stated below, the Court **GRANTS** Defendants' motion for partial summary judgment.

## II.   Summary of Key Allegations and Related Facts

In his August 2012 complaint, Plaintiff alleged that Defendant Nutall retaliated against Plaintiff for filing grievances by disposing of his legal documents and personal possessions (Count 1) (Doc. 15 at pp. 1-2). He further alleged that current and former IDOC directors and wardens, including Defendants Godinez, Taylor, Ryker, Gaetz and Young, conspired to retaliate against Plaintiff -- the retaliation being failure to respond to his grievances and investigate his complaints (Count 2) (*Id*. at p. 2). He also alleged that Defendants Ryker and Nutall failed to protect him from assault by another inmate, Phillip Dotson, while housed at Lawrence Correctional Center (Count 3) (*Id*. at pp. 2-3). Because the pending motion seeks summary judgment only on Counts 2 and 3, the Court focuses on the facts related to those two claims.

The claims which make up Plaintiff's complaint are based on events which took place while he was housed at Lawrence Correctional Center, Pinckneyville Correctional Center, and Western Illinois Correctional Center. Plaintiff was housed at Lawrence from May 26, 2010 through April 20, 2011; at Pinckneyville from April 20, 2011 through February 15, 2012; and at Western from February 15, 2012 through January 9, 2013.

While at Lawrence, Plaintiff was assaulted by his cellmate, Phillip Dotson, and he alleges that Nutall failed to protect him from that assault. In an April 2014 deposition taken in this case (the transcript of which was presented with Defendants' motion),

Plaintiff testified that between February and April 5, 2011, he spoke to his counselor about Dotson (Doc. 72-3 at p. 51). Plaintiff stated that he told his counselor that Dotson was trying to start fights with him (*Id.* at p. 59), and also spoke with his gallery officers and "mental health people" (*Id.* at p. 61). Inmate Dotson informed Plaintiff that he had assaulted staff in the past, and he threatened to beat Plaintiff (*Id.* at pp. 61-62).

Plaintiff further testified as follows. On April 5, 2011, Plaintiff was assaulted by Dotson (*Id.* at pp. 58-59). He had been housed with Dotson for 50 days at that point (*Id.* at p. 59). Although Plaintiff told numerous officers and his counselor in his housing unit about his concerns regarding Dotson, he did not tell Nutall because Nutall (at that time) was in another housing unit (*Id.* at p.62). Plaintiff did see Nutall in his housing unit on occasion. Nutall had friends there. Plaintiff believes that Nutall influenced the situation, because the guards in his unit became more aggressive with shakedowns of Plaintiff's cell (*Id.* at pp. 65-66). Plaintiff also spoke to Defendant Ryker in the chow hall once about his concerns with Dotson, and Ryker said he would look into it (*Id.* at p.62). Plaintiff wrote grievances on the issue, and his counselor informed Plaintiff that the matter had been sent to Internal Affairs (*Id.* at p. 63).

In addition to his failure to protect claim, Plaintiff alleges that numerous IDOC officials failed to respond to his grievances in retaliation for Plaintiff filing prior grievances. Plaintiff alleges a retaliation claim against the directors of IDOC and the wardens of the three facilities that he was housed at from 2010 to 2012. Defendant Taylor was the acting director of the IDOC from September 2010 to May 2011; Defendant

Godinez has been the director since May 2011.  Defendant Ryker was the warden at Lawrence Correctional Center when Plaintiff was housed there, and Defendant Gaetz was the warden of Pinckneyville Correctional Center from December of 2011 until after Plaintiff was transferred.   Defendant Young was acting warden and warden of Western Illinois Correctional Center from August 2011 to July 2012.

As directors of the IDOC, Defendants Taylor and Godinez delegated the responsibilities of reviewing inmate grievances on appeal to the Administrative Review Board (ARB), and Terri Anderson, Chairperson of the ARB, reviewed ARB decisions on behalf of the directors (Doc. 72-1 at p. 1 ¶¶ 4-6; 72-1at p. 3 ¶¶ 4-6).   Neither director read or reviewed inmate grievances or ARB decisions; nor did they sign off on the ARB's review of the grievances (Doc. 72-1 at p.1 ¶¶7-8; 72-1 at p. 3 ¶¶ 7-8).   Plaintiff maintains that Defendant Godinez has denied every grievance Plaintiff has written to the ARB (Doc. 72-3 at p. 4).   According to Plaintiff, Godinez should have investigated the claims in his grievances (*Id*. at p. 5).   Plaintiff also maintains that Defendant Taylor should have investigated his grievances regarding Defendant Nutall (*Id*. at pp. 19-20, 24).

Defendant Gaetz was the warden at Pinckneyville Correctional Center when Plaintiff was transferred to that facility (Doc. 72-3 at p. 28).   Plaintiff claims that when he was assaulted by his cellmate at Lawrence Correctional Center, he wrote to the Governor of Illinois after the assault and Gaetz, who at that time was the Southern Region Deputy Director, did not provide any relief (*Id.* at pp. 29-30).   Plaintiff testified that the Governor sent Gaetz a letter asking him to investigate Plaintiff's claims, but Gaetz did

not help Plaintiff (*Id*. at p.38). Plaintiff maintains that when Gaetz became the warden at Pinckneyville, he did respond to subsequent grievances Plaintiff filed, but he denied every one of them (*Id*. at pp. 31-32).

Defendant Young was the warden at Western Illinois Correctional Center. Plaintiff testified that he spoke with Young twice about getting medical care when he transferred to Western (Doc. 72-3 at p. 40). Plaintiff was seen by Dr. Vipin Shah and others while at Western (*Id*.). Plaintiff testified that Young refused to help him, but that Plaintiff did meet with medical staff (*Id*. at pp. 41-42). Plaintiff stated that Young signed off on the grievances without investigating them and that he didn't properly respond to the grievances (*Id*. at p. 43).

Derwin Ryker was the warden at Lawrence Correctional Center while Plaintiff was housed there. Plaintiff testified that Ryker failed to prosecute Philip Dotson after he assaulted Plaintiff and failed to call the sheriff's department to report the crime (Doc. 72-3 at p.46).

### III. Applicable Legal Standards

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Dynegy Mktg. & Trade v. Multi Corp., 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted),** *citing* **FED. R. CIV. P. 56(a).** *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005).**

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).** After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).** A fact is material if it is outcome determinative under applicable law. *Anderson*, **477 U.S. at 248;** *Ballance v. City of Springfield, Ill. Police Dep't*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger*, **388 F.3d 1015, 1027 (7th Cir. 2004).**

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.** "A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, **246 F.3d 927, 931–32 (7th Cir. 2001) (citations and quotations omitted).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant (here, Plaintiff). *Srail v. Village of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** The Court adopts reasonable inferences, and resolves doubts, in the nonmovant's favor. *Id.*; *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008).** Summary judgment is "not an appropriate occasion for

weighing the evidence" and should not be granted if the evidence before the court supports alternate inferences. *Dowden v. Polymer Raymond, Inc.*, 966 F.2d 1206, 1207-08 (7th Cir. 1992). *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004), *cert. denied,* 546 U.S. 1032 (2005).

IV.   Analysis

    A.   CONSPIRACY TO RETALIATE

Plaintiff alleges that Defendants Taylor, Godinez, Gaetz, Young and Ryker retaliated against him by failing to respond to his grievances. An official who retaliates against a prisoner for filing a grievance violates the prisoner's rights under the First Amendment to the United States Constitution. *See Gomez v. Randle,* **680 F.3d 859, 866 (7th Cir. 2012) ("A prisoner has a First Amendment right to make grievances about conditions of confinement.");** *DeWalt v. Carter,* **224 F.3d 607, 618 (7th Cir. 2000) ("An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution.").**

Establishing a claim of retaliation requires a prisoner to show that: (1) he engaged in a protected activity, (2) he suffered a deprivation likely to prevent future protected activities, and (3) there was a causal connection between the two. *See Watkins v. Kasper,* **599 F.3d 791, 794 (7th Cir. 2010);** *Bridges v. Gilbert,* **557 F.3d 541, 546 (7th Cir. 2009).** *See also Devbrow v. Gallegos,* **735 F.3d 584, 588 (7th Cir. 2013) ("Retaliation requires a showing that the plaintiff's conduct was a motivating factor in defendants' conduct.").** At summary judgment, "mere speculation" by the plaintiff is insufficient

to carry his burden. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 544 F.3d 752, 757 (7th Cir. 2008); *Devbrow*, 735 F.3d at 588. And a defendant can prevail if he shows that the offending action would have happened even if there had been no retaliatory motive, i.e., the alleged harm would have occurred anyway. *Mays v. Springborn*, 719 F.3d 631, 634-35 (7th Cir. 2013); *Greene v. Doruff*, 660 F.3d 975, 977-80 (7th Cir. 2011).

Plaintiff presents his retaliation claim in the form of a conspiracy claim. But the United States Court of Appeals for the Seventh Circuit has explained that a conspiracy claim does not require a separate analysis from the underlying claim on the merits, since the function of a conspiracy claim is merely to "permit recovery from a private actor who has conspired with state actors." *Turley v. Rednour*, 729 F.3d 645, 649 n.2 (7th Cir. 2013). "When, as here, the defendants are all state actors, a … [conspiracy] claim does not add anything except needless complexity." *Id*. The conspiracy claim is, thus, superfluous to the retaliation claim. *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009).

### 1. *Godinez and Taylor*

Defendants Godinez and Taylor argue that they are entitled to summary judgment on Plaintiff's retaliation claim because they did not review his grievances. Plaintiff alleges that Defendants retaliated against him for writing grievances by either denying his grievances or not responding to his grievances. He also alleges that Defendants did not effectively investigate his claims.

The Court first notes that simply rejecting a grievance does not amount to a constitutional violation. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Furthermore, not every person who knows of a wrong "must do something to fix it." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Here, it appears that Plaintiff is upset that his grievances were denied at the administrative level, but that denial does not indicate retaliation on either Defendant's part.

Moreover, there is no evidence that Godinez or Taylor retaliated against Plaintiff. In fact, the evidence in the record indicates that Godinez and Taylor did not *see* Plaintiff's grievances, as both directors delegated their duty to review grievances to the Administrative Review Board (ARB) and Terri Anderson. Terri Anderson was tasked with the duty of signing off on the ARB's decision. There is no evidence in the record that Godinez or Taylor reviewed any of Plaintiff's grievances. Thus, they would have no knowledge of his prior grievances to retaliate against Plaintiff for, and they had no knowledge of the grievances Plaintiff claims were inappropriately denied. There simply is no evidence Defendants were motivated to retaliate, or that they retaliated, against Plaintiff, since they did not even see Plaintiff's grievances.

Plaintiff maintains that Godinez and Taylor still are liable, because they were not allowed to delegate their responsibilities to the ARB. Plaintiff argues that a provision of the Illinois Administrative Code, **20 Ill. Admin. Code 504.805,** prevents IDOC directors from delegating their duties as to grievances. Section 504.805(a) allows the director to delegate his duties unless otherwise specified by the code. Section 504.805(b) requires

that the director perform duties when the code "specifically states the Director … shall personally perform the duties," and states that the director can designate a person to perform his functions in a temporary absence or emergency. Plaintiff argues that as neither director indicated that there was a temporary absence or emergency, they could not delegate to the ARB their function of reviewing grievances.

This argument misses the mark. The code does not state that the director must personally review grievances or that the Administrative Review Board cannot perform this routine function. Assuming, for the sake of argument, that the code did say this and that Defendants improperly delegated grievance review duties to the ARB, neither that delegation (nor the failure to review Plaintiff's grievances) would be evidence *of retaliation against Plaintiff*; the delegation was for all inmates' grievances, not just Plaintiff's. The record is devoid of any evidence that Defendants Godinez and Taylor retaliated against Plaintiff. A reasonable jury could not return a verdict in Plaintiff's favor on this claim. Accordingly, Defendants Godinez and Taylor are entitled to summary judgment on this claim.

### 2. *Ryker, Gaetz, and Young*

Defendants Ryker, Gaetz, and Young also are entitled to summary judgment on Plaintiff's conspiracy to retaliate claim. Plaintiff alleged in his complaint that Defendant Ryker, Gaetz, and Young retaliated against him by failing to respond to his grievances. As to Gaetz, Plaintiff testified in deposition that Gaetz was acting Southern Region Deputy Director, that when Plaintiff wrote a letter to the governor it was

transferred to Gaetz for review, and that Gaetz's response was inadequate. Plaintiff testified that Gaetz denied every grievance Plaintiff wrote to him and that Gaetz was short with him when they spoke (Doc. 72-3 at pp. 30-32). As to Defendant Young, Plaintiff testified that he talked to Young on two occasions regarding receiving medical care, and Young seemed indifferent to Plaintiff's requests (Doc. 72-3 at pp. 41-42). Plaintiff admitted that he did meet with doctors and did receive medical permits after his discussion with Young (*Id.*). Plaintiff believed that Young just signed off on grievances and did not investigate them (*Id.* at p. 43). As to Defendant Ryker, Plaintiff testified that Ryker would not call the sheriff's department and report the assault by Plaintiff's cellmate (*Id.* at p. 46).

Reviewing the evidence in the light most favorable to Plaintiff, the Court finds no evidence of retaliation by these Defendants. Plaintiff's complaint alleged that the Defendants did not respond to his grievances, but Plaintiff testified at his deposition that the Defendants did response to his grievances, they just denied the grievances. Plaintiff testified that Gaetz's response to his letter was inadequate. But as the Court previously noted, simply rejecting a grievance does not create liability for a constitutional violation. *George,* **507 F.3d at 609.**

Plaintiff takes issue with Defendants for not ruling on his grievances the way he wanted them to. Specifically, as to Gaetz, Plaintiff alleges that his response to Plaintiff's letter was inadequate. The record shows however that Gaetz merely told Plaintiff that he was not following the proper channels in voicing his complaints directly to the

governor (Doc. 1-2 at p. 10). Plaintiff wrote a letter to the governor expressing concerns about his pain from the assault at Lawrence. Gaetz advised Plaintiff that he needed to file a grievance about his complaints, not write a letter to the governor (*Id.*). There is no indication anywhere in the record that Gaetz sought to retaliate against Plaintiff by not providing the relief he requested. Instead, it appears that Plaintiff did not follow correct protocol, and Gaetz directed him on how to properly raise his issues and complaints. Gaetz also indicated that he would forward Plaintiff's complaints to the warden of Plaintiff's current prison. Nothing suggests that this response was improper or inadequate – much less was it retaliatory.

The same is true for Defendants Young and Ryker. There is no evidence that they sought to retaliate against Plaintiff by denying his grievances. Plaintiff alleged that Young inadequately responded to his requests for medical care, but Plaintiff admitted in his deposition that he received medical permits and saw the doctor after he spoke with Young. Young also responded to numerous grievances from Plaintiff (Doc. 71-1 at pp. 32-35). Nothing in the record suggests that Young retaliated against Plaintiff.

Likewise absent is any evidence that Ryker retaliated against Plaintiff. Plaintiff argues that Ryker retaliated against him by not prosecuting the assault by Plaintiff's cellmate, but Plaintiff admits that Internal Affairs investigated the assault (Doc. 72-3 at p.47). Plaintiff disagrees with the decision not to file charges in state court against his cellmate. But there is absolutely no evidence suggesting that this decision was made in retaliation against Plaintiff or that it is causally connected to Plaintiff's protected activity

(filing grievances). Nor is there any evidence that Ryker failed to address Plaintiff's grievances. To the contrary, Ryker did respond to numerous grievances by Plaintiff (Doc. 71-2 at pp. 3-24). No reasonable jury could return a verdict in Plaintiff's favor on this claim. Accordingly, the Court finds these three defendants are entitled to summary judgment on Plaintiff's retaliation claim.

### B. FAILURE TO PROTECT

Defendants Ryker and Nutall argue that they are entitled to summary judgment on Plaintiff's failure to protect claim. To prevail on a failure to protect claim, a plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, and the defendant acted with "deliberate indifference" to that danger. *Farmer v. Brennan*, **511 U.S. 825, 834 (1994).**

To satisfy the first prong, the inmate must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, **511 U.S. at 834**. This means that the inmate must show that prior to the incident, there was a substantial risk that harm might occur. *Brown v. Budz*, **398 F.3d 904, 910 (7th Cir. 2005)**. The courts have found that an inmate who is assaulted by other inmates has experienced a substantially serious harm. *Brown*, **398 F.3d at 910.**

Plaintiff must also show "actual knowledge of that risk" by the defendants. *Weiss v. Cooley*, **230 F.3d 1027, 1032 (7th Cir. 2000),** *citing Henderson v. Sheahan*, **196 F.3d 839, 844-45 (7th Cir. 1999), and** *Payne for Hicks v. Churchich*, **161 F.3d 1030, 1041 (7th Cir. 1998).** He must show that the defendants were aware of a risk and failed to

take the appropriate steps to protect the inmate. *Id.* Actual knowledge can be inferred from circumstantial evidence. *Fisher v. Lovejoy*, **414 F.3d 659, 662 (7th Cir. 2005),** *citing Farmer*, **511 U.S. at 842.**

### 1. <u>Eric Nutall</u>

Plaintiff testified that he did not tell Nutall about his concerns with Dotson, because Nutall did not work in the housing unit where Plaintiff was housed with Dotson. Plaintiff admitted that he was in Housing Unit 5 while Nutall worked in Housing Unit 1 (Doc. 72-3 at pp. 61, 65). There is no evidence that Nutall had knowledge of the risk to Plaintiff from Dotson. Nutall was not an officer in Plaintiff's housing unit, and Plaintiff did not have contact with Nutall or tell Nutall his concerns regarding Dotson.

Plaintiff maintains that Nutall is liable anyway, because he made threats and intimidated Plaintiff on August 30, 2010. This event has nothing to do with the assault on Plaintiff by Dotson and took place months before Plaintiff was even housed with Dotson. Plaintiff appears to be referring to events related to his retaliation claim against Nutall in Count 1, which is not at issue in the pending motion for summary judgment. There is no indication that the events which occurred on August 30, 2010 are related in any way to the assault on Plaintiff which occurred April 5, 2011.

Plaintiff testified in his deposition that he believed that Nutall had something to do with the assault by Dotson, because Nutall would visit his fellow officers in Housing Unit 5 and Plaintiff thinks those officers acted aggressive towards him afterwards.

This, again, is unrelated to the assault on April 5, 2011. Inmate Dotson, not the other guards, assaulted Plaintiff. There is no testimony or evidence from Plaintiff that the officers that Plaintiff saw Nutall speaking with had anything to do with the Dotson attack, nor has Plaintiff alleged such. All Plaintiff offers is his belief that Nutall was involved with the assault, and at summary judgment mere belief is not enough. The summary judgment stage is "the put up or shut up moment in the lawsuit" at which the plaintiff must "show what evidence [he] has that would convince a trier of fact to accept [his] version of events." *Olendzki v. Rossi,* **765 F.3d 742, 749 (7th Cir. 2014),** *quoting* *Steen v. Myers,* **486 F.3d 1017, 1022 (7th Cir. 2007).** Here, Plaintiff has not presented any evidence that Nutall was aware of the danger Dotson posed to Plaintiff. Plaintiff concedes that he did not inform Nutall of the situation, and Nutall was not an officer in Plaintiff's housing unit. Accordingly, the Court finds that Nutall is entitled to summary judgment on Plaintiff's failure to protect claim.

### 2. *Derwin Ryker*

Similarly, Defendant Ryker is entitled to summary judgment on Plaintiff's failure to protect claim. Plaintiff alleges that Ryker failed to protect Plaintiff by placing inmate Dotson in a cell with Plaintiff when Ryker knew that Dotson was a violent offender. Plaintiff testified that Dotson had assaulted staff and was placed in segregation six months prior to his being released into general population. However, there is no evidence that just transferring Dotson back to general population put Plaintiff at serious risk. Dotson had been in segregation due to a staff assault. There was no evidence or

indication that he had ever assaulted an inmate, such that the risk to Plaintiff would have been obvious. *See, e.g., Washington v. LaPorte County Sheriff's Dept.*, **306 F.3d 515, 519 (7th Cir. 2002) (risk of inmate attack can be deemed obvious if long-standing);** *Brown*, **398 F.3d at 911 ("substantial risk" can be found when inmate has known propensity of violence toward a particular inmate or a class of inmates).**

Plaintiff argues that Ryker ignored Plaintiff's complaints about inmate Dotson prior to the assault. However, the record reflects otherwise. The evidence indicates that when Plaintiff stopped Ryker in the chow hall, Ryker told Plaintiff that he would look into Plaintiff's complaints (Doc. 72-3 at pp. 62-63). And Plaintiff acknowledges that his concerns were turned over to Internal Affairs for investigation (*Id.* at p.63). Thus, the evidence in the record indicates that Ryker was investigating Plaintiff's concerns about his cellmate prior to the assault. This is not deliberate indifference by Ryker. No reasonable jury could find that Defendant Ryker knew of *and disregarded* an excessive or substantial risk to Plaintiff's safety. *Brown,* **398 F.3d at 916 ("mere awareness of the facts giving rise to a substantial risk is not enough").**

### IV. Conclusion

Construing all facts and reasonable inferences in Plaintiff's favor, the Court concludes that no genuine issue of material fact remains, and Defendants are entitled to summary judgment as a matter of law on Counts 2 and 3. The Court **GRANTS** Defendants' motion for partial summary judgment (Doc. 71). At the close of the case, the Clerk of Court shall enter judgment against Plaintiff and in favor of Defendants

Godinez, Taylor, Ryker, Gaetz, and Young on Plaintiff's retaliation claim and shall enter judgment against Plaintiff and in favor of Defendants Nutall and Ryker on Plaintiff's failure to protect claim.

Remaining for trial is one claim against a single Defendant -- Plaintiff's retaliation claim against Defendant Nutall (Count 1). That claim is scheduled to proceed to trial January 5, 2015 before the undersigned District Judge. However, the undersigned has a criminal trial scheduled to begin the same day, and the criminal trial will take precedence over this civil setting. The undersigned will not know until quite close to the trial date which case will be called on January 5, 2015. If the parties seek more certainty for planning purposes, they may obtain a firm trial date by consenting to trial before Judge Williams. (That is mentioned simply as an option for the convenience of the parties; no adverse consequences result from choosing to not consent to trial by a Magistrate Judge of this Court.)

The Court **FINDS MOOT** Defendants' December 5, 2014 motion to stay (Doc. 95).

IT IS SO ORDERED.

DATED December 12, 2014.

                                          *s/ Michael J. Reagan*
                                          Michael J. Reagan
                                          United States District Judge